IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMPSON, | No. C02-02098 MJJ |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR CERTIFICATE OF APPEALABILITY** |
| v. | |
| PLILER, | |
| Defendant. | |

Pending before the Court is Henry Thompson's ("Petitioner") motion for a Certificate of Appealability ("COA") (Docket No. 19.) Petitioner seeks an appeal to the Ninth Circuit pursuant to 28 U.S.C. § 225(c) and Federal Rule of Appellate Procedure 22(b). Petitioner requests that the Court certify the following issues: (1) whether the trial court clearly erred when it failed to grant a mental competency hearing; (2) whether the trial court violated Petitioner's Sixth Amendment and due process rights to confront witnesses and to be given a fair trial when it admitted booking records at trial over Petitioner's hearsay objection; (3) whether the trial court's limitations on the scope of the victim's cross-examination during the trial violated his Sixth Amendment rights; and (4) whether the introduction of an allegedly unduly suggestive pretrial lineup violated his due process rights.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Petitioner's Motion.

*///*

# FACTUAL BACKGROUND

After a previous trial had ended in a hung jury, Petitioner was retried. At the close of the second trial, the jury convicted Petitioner of burglary, robbery, forcible oral copulation, and false imprisonment.

Petitioner thereafter filed a pre-sentence motion to strike the prior convictions based on an evaluation by Dr. Dale Watson. Dr. Watson noted that Petitioner was placed in Educationally Handicapped classes beginning in the fifth grade as a result of mental retardation and that by tenth grade he had dropped out entirely. Dr. Watson also reported that Petitioner "had a composite Total Grade Level at only the 1st grade." Various past reports found Petitioner to be mildly to moderately retarded, with an IQ in the 50's, although one evaluation performed in 1975 found Petitioner's then-present level of functioning at between 90 to 100. Dr. Watson's tests placed Petitioner's Full Scale IQ at only 61. As a result, Dr. Watson concluded that Petitioner had "poor verbal comprehension skills, faulty perceptual-organizational abilities, [was] slow at processing information and [could not] actively attend to and manipulate information cognitively." (Answer, Exh. A at 275-85.)

The trial court denied the motion to strike. On January 16, 1998, the trial court sentenced Petitioner to sixty-five years to life in prison.

Subsequently, Petitioner filed a request for a modification of his sentence, asking the court to exercise discretion under California Penal Code section 1170(d) and drop the prior "strike" convictions. Petitioner retained Dr. Timothy Derning, a licensed psychologist, to review him. Dr. Derning filed a declaration, concluding that Petitioner had "demonstrated little or no theoretical understanding of court procedures, or of legal definitions . . . which so heavily influenced his judgment that they seriously interfered with his ability to weigh the circumstances of his various cases, make plea bargains, cooperate with his attorney, etc." (Answer, Ex. C at 24.) The trial court denied Petitioner's request.

After exhausting State court remedies, Petitioner filed a habeas petition under 28 U.S.C. § 2254(d), which the Court denied. This request for a COA then followed.

///

///

2

**LEGAL STANDARD**

Section 2253 requires a petitioner obtain a COA from the district court prior to filing an appeal from a denial of petition for habeas relief. 28 U.S.C. § 2253. A court may issue a COA provided that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this threshold showing, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (""Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward. "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). A COA does not require the petitioner to show that he will prevail, rather it requires only that a claim be debatable, even if every jurist of reason might agree habeas relief is not proper. *Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003). Section 2253(c)(3) requires a court granting a COA to indicate which issues satisfy the COA standard.

**ANALYSIS**

Here, the Court finds that three of the four issues presented by Petitioner in his habeas petition meet the above standard..

**A.     Failure to Grant a Competency Hearing.**

The Supreme Court has held that adequate procedures must be in place to protect against the conviction of an accused person while he is legally incompetent to stand trial. *Pate v. Robinson*, 383 U.S. 375, 378 (1966), quoting *Bishop v. United States*, 350 U.S. 961 (1956). Due process requires that when a trial court feels there is a sufficient question as to a defendant's competency, it must hold a hearing to hear evidence as to whether a defendant is acting irrationally, questioning his demeanor at trial, and allow in any prior medical opinion on competency to stand trial. *Drope v. Missouri*, 420 U.S. 162, 180 (1975). Any one of these factors standing alone may be sufficient to ask for a competency hearing. *Id*.

In his petition, Petitioner argued, in part, that Dr. Derning's post-sentence report should have

established case doubt on defendant's competency. This Court rejected that argument, nothing that evidence casting doubt on a defendant's competency must be presented prior to sentencing, and that therefore Dr. Derning's expert opinion in support of a post-judgment motion to recall was irrelevant to whether a competency hearing should have been ordered during the pendency of the trial. On this point, reasonable jurists would not differ. The Court therefore will not certify this particular alleged error for appeal.

However, with respect to this Court's finding that there was no "clear error" in the trial court's determination based on other evidence before it that there was no need for a competency hearing, this Court previously found that the trial court's determination "might be debatable." (Docket No. 16 at 6.) Although this Court found no "clear error", reasonable jurists could disagree as to whether Dr. Watson's pre-sentence report, Petitioner's low IQ, and Petitioner's attorney's statements that he was having difficulty communicating, collectively rises to the level of creating a "bona fide doubt" regarding Petitioner's competency. The Court will therefore certify this issue for appeal.

**B. Admission of the Booking Records**.

Admission of evidence that is firmly rooted in a hearsay exception does not violate the Confrontation Clause. *United States v. Contreras*, 63 F.3d 852, 857 (9th Cir. 1995) (citation omitted). The Court found that the public records exception was properly utilized in this case, and Petitioner has not put forth an argument placing the record into doubt. The trial court excluded the booking records during the first trial because there was no custodian of records to ensure accuracy. (Order at 9:4-6.) However, at the second rial, the booking record was brought in under the firmly rooted public records exception after a California Evidence Code Section 402 hearing. Officer Petuya testified as to his regular booking practice, including recording names, such that the reliability of the entry was established. Reasonable jurists would not differ as to whether the reliability of the booking record had been shown. Accordingly, the Court will not certify this issue for appeal.

**C. Limitation On Cross-Examination Of The Victim.**

Petitioner argues that the trial court violated his Sixth Amendment rights when it disallowed

4

full cross-examination of the victim about whey she had changed her testimony between the first and second trial. Petitioner argued in his Petition that if the jury had known the first trial had resulted in a hung jury, the outcome of the second trial would have been greatly altered.

The trial court, in its discretion, allowed defense counsel to question the victim as to her inconsistent statements, but refused to allow counsel to describe the prior adjudication as a "trial." Instead, the court ordered that it be called a "hearing." The victim, however, forgot the judge's order on three occasions and referred to her previous testimony as being part of the prior trial. The jury was also present to hear defense counsel cross-examine the victim about her other prior inconsistent statements.

In analyzing the trial court's exclusion of evidence concerning the existence of an earlier trial and the fact that it resulted in a hung jury, this Court found that the excluded evidence was relevant to show that the victim had a motive to change her testimony because she knew that the first trial had ended with the jury unable to reach a verdict. However, this Court found no Sixth Amendment violation under *United States v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999) because there were other legitimate interests outweighing the defendant's interest in presenting the evidence and because the jury still had sufficient information to assess the credibility of the witness.

Reasonable jurists could differ as to both of these last two findings. First, reasonable jurists could disagree as to whether the trial court's restriction on cross-examination undermined the defendant's assertion that the victim's motive to change her testimony arose after she learned that her earlier statements had not been adequate to convict. Second, reasonable jurists could also disagree as to whether the other information available to the jury was sufficient to assess the victim's credibility and motive to lie. Accordingly, the Court will certify this issue for appeal.

**D. Pre-Trial Photographic Lineup**

Petitioner disputed the legitimacy of the pretrial photographic lineup. Courts apply a two-prong test allowing for the exclusion of identifications based on impermissibly suggestive photo arrays. 390 U.S. 377, 384 (1968). A court must first determine whether the identification was impermissibly suggestive. *Id*. If so, the court must next determine whether the identification was nevertheless reliable under the totality of the circumstances. *Id*. In making this determination, the

1 court considers such factors as the opportunity for the witness "to view the criminal at the time of
2 the crime, the witness's degree of attention, the accuracy of [the witness's] prior description of the
3 criminal, the level of certainty demonstrated at the confrontation, and the time between the crime
4 and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The court weighs these
5 factors against the "corrupting effect of the suggestive identification itself." *Id*.

6 Petitioner argued that he met his burden of proving that the witness's identification was
7 tainted by exposure to an impermissibly suggestive lineup. However, this Court found that, under
8 controlling authority, the lineup was not unduly suggestive because it did not induce a very
9 substantial likelihood of irreparable misidentification. Moreover, this Court found that, in any event,
10 a totality of the circumstance rendered the lineup reliable because of the victim's significant
11 opportunity to observe her attacker, the detail in the victim's initial description of her assailant, and
12 the timing of the photospread relative to the assault. Reasonable jurists would not differ on these
13 findings. Accordingly, the Court will not certify this issue for appeal.

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART**
Petitioner's request for a Certificate of Appealability pursuant to 28 U.S.C. § 2253. The issues
certified for appeal are as follows:

1. Whether Dr. Watson's pre-sentence report, Petitioner's low IQ, and/or Petitioner's
attorney's statements that he was having difficulty communicating, taken individually or
collectively, rose to the level of a "bona fide doubt" regarding Petitioner's competency that should
have led the trial court to order a competency hearing; and

2. Whether the trial court erred by not allowing Petitioner to fully question the victim as to
whether the hung jury in the initial trial played a role in her changed testimony.

The Clerk **SHALL** transmit the file, including a copy of this Order, to the Court of Appeals.
*See* Fed. R. App. P. 22(b); *United States v. Asrar*, 116 F.3d 1268, 170 (9th Cir. 1997).

**IT IS SO ORDERED.**

Dated: March 21, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE